**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

JAMES C. MAY,                                                                                                          PLAINTIFF
ADC #137749

V.                                              5:13CV00215-JLH-JJV

RICHARD, Dr., Arkansas
Department of Correction; *et al*.                                                                   DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

Plaintiff May, a state inmate confined at the Varner Unit of the Arkansas Department of Correction (ADC) filed this action *pro se* pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious mental health needs while he was incarcerated at the Ouachita River, North Central, and Varner Units.

Pending before the Court are Defendants' Motions for Summary Judgment (Doc. Nos. 24, 29). Plaintiff filed Responses to the Motions (Doc. Nos. 33-38), and Defendants filed Replies (Doc. Nos. 39, 41.)

### II. FACTS

May alleges that, despite his diagnosis of major depressive disorder without psychotic features, post-traumatic stress disorder, and personality disorder, his mental health medications were discontinued on April 23, 2012, when he entered the ADC. (Doc. No. 2 at 5.) Defendants initially refused to prescribe any psychotropic medications and a later prescription for the antidepressant, Prozac, provided no relief. (*Id*. at 7.) He specifically alleges Dr. Forrest examined him when he entered the ADC, and did not continue his mental health medication. (*Id*. at 8.) He also claims Dr.

Richard refused to prescribe him medication, despite his depression, lack of appetite, mood swings and flash-backs. (*Id*.) Ms. Kelley did not respond to his letters about his mental health problems, and Defendants Saling, Annie Rector, Mabry, and Margaret Rector failed to provide the necessary mental health medication and treatment. (*Id*. at 8-9.) Finally, the rehabilitation program manager failed to provide him with treatment for his mental health issues.[1] As a result, he suffered from depression and mood swings that caused a lack of sleep, weight loss, and lack of conversation skills. (*Id*. at 7.) Plaintiff asks for damages from the Defendants.

### III.   SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually

---

[1] Although Plaintiff named Defendant "Unknown, Rehabilitation Program Manager, North Central Unit," (Doc. No. 2 at 3), he never identified this defendant by name, and he/she has not been served with the Complaint. Therefore, this Defendant should be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

affect the outcome of the lawsuit." *Id*.

  A.  **Exhaustion**

  Defendants Richard, Forrest, Kelley, Mabry, and Rector seek dismissal due to Plaintiff's failure to first exhaust his administrative remedies against them. Drs. Richard and Forrest state that Plaintiff never specifically identified them in grievances submitted, as required by the ADC grievance policies in effect, and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. While acknowledging inconsistency in the United States Court of Appeals for the Eighth Circuit with respect to exhaustion issues, Defendants rely on *Champion v. Akins*, where the court differentiated between officials identified as subjects of the grievances and those merely mentioned in the grievances. No. 12-2467, 498 Fed. Appx. 670 (8th Cir. 2013) (unpublished). In the three exhausted grievances for the time at issue in his Complaint, Dr. Forrest was not named, and Plaintiff did not grieve any wrongdoing by either Forrest or Richards. See grievances NC 12-00386, NC 12-00405, NC 13-00026 (Doc. No. 31-2 at 5-14.) *See also* Declaration of Shelly Byers, ADC grievance investigator, who states that from July 11, 2010, to July 13, 2013, Plaintiff did not appeal grievances NC 12-00231, NC 12-00273, NC 13-00096, or VU 13-00772, to the Deputy Director for Health and Correctional Programs. (Doc. No. 31-3.)

  Similarly, Defendants Kelley, Mabry, and Margaret Rector state that Plaintiff failed to specifically name them in the three exhausted grievances. They also provide a declaration of Shelly Byers, who states that the grievance policies in effect from January 1, 2011, until the present, were Administrative Directives (AD) 10-32 and 12-16. (Doc. No. 27-4 at 1.) According to those policies, an inmate must include in the grievance a "brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*. at 2; Doc. Nos. 24-2, 24-3.) Based on her

4

review of the grievances he filed, Ms. Byers found that Plaintiff did not specifically name Wendy Kelley, Robbie Mabry, or Margaret Rector in any of the exhausted grievances. (Doc. No. 27-4 at 2.)

Plaintiff responds that he "exhausted his available administrative remedies to the best of his ability." (Doc. No. 34 at 2.) He says he named all the defendants he thought should be included in the grievances he filed, and at times he could not file complaints because he was housed in isolation and lacked materials. (*Id.*, Doc. No. 37 at 3.)

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), *unconst'l on other grounds, Siggers-El v. Barlow*, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In *Booth v. Churner*, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held in *Chelette v. Harris*, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting *Castano v. Nebraska Dep't of Corrections*, 201 F.3d 1023, 1025 (8th Cir. 2000)). In *Johnson v. Jones*, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003)

(emphasis in original).  Finally, in *Jones v. Bock*, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

The United States Court of Appeals for the Eighth Circuit recently ruled that if prison officials decide a procedurally-flawed grievance on the merits, they effectively waive the argument that an inmate failed to exhaust because he did not comply with the grievance procedures.  In *Hammett v. Cofield*, an inmate relied on grievances which were not exhausted or which were filed outside of mandatory time limits. 681 F.3d 945 (8th Cir. 2012). The Court decided, however, that the "PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *Id*. at 947.  This line of reasoning was extended to an exhausted grievance filed by an inmate who failed to comply with prison procedures requiring that defendants be specifically named, in *Bower v. Kelley*, 494 Fed.Appx. 718, 2012 WL 6199266 (8th Cir. 2012).

Yet, in *Jones v. Hobbs*, the Court held that a grievance exhausted as to one party does not equal a grievance exhausted as to all.  No. 12-2002 (8th Cir. January 22, 2013 (per curiam)).  And in *Champion v. Akin*, the Court held that although two Defendants (Burl and Ball) were addressed as readers in a grievance filed about Defendant Akin, he did not state how Burl and Ball were involved in the grieved incidents, as required by ADC policy.  498 Fed.Appx. 670.

Here, grievance NC 12-00386 raises problems with mood swings and depression, and the allegation the mental health staff were not taking his issues seriously.  (Doc. No. 31-2 at 14.)  He specifically complained about encounters with Annie Rector and her promises to speak with the "Dr." (*Id*.)  On appeal, Defendant Kelley noted that Plaintiff had been treated by two psychiatrists, neither of whom found a need for prescription medications.  (*Id*. at 12.)

In grievance NC 12-00405, Plaintiff complained that Dr. Richard "is making it where I won't get a proper diagnosis" and Ms. Annie Rector would not permit additional tests until his appointment with Dr. Richard. (Doc. No. 31-2 at 11.) The response from the health services administrator mentioned the fact that Dr. Richard evaluated and treated Plaintiff. But Plaintiff disagreed with that finding and stated, "Dr. Richard is not taking me seriously so I feel a proper evaluation is not been done." (*Id*. at 10.) Ms. Kelley also mentioned Dr. Richard's encounters with Plaintiff in her review of his appeal. (*Id*. at 9.)

In grievance NC 13-00026, Plaintiff complained that Defendant Saling denied his request to see the psychiatrist, and therefore, denied him needed mental health care. (Doc. No. 31-2 at 8.) In her decision on appeal, Ms. Kelley noted treatment was provided to Plaintiff by Dr. Margaret Rector. (*Id*. at 5.)

Having reviewed the three exhausted grievances, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to Defendants Forrest, Kelley, and Mabry. The ADC grievance policies in effect at the time required that Plaintiff name the individuals involved in his issue or complaint. These Defendants were never named by Plaintiff. The Court, however, finds that Plaintiff did name Dr. Richard in grievance NC 12-00405, both in the original formal grievance he filed, and in the appeal. (Doc. No. 31-2 at 10-11.) In addition, the Court finds that although Plaintiff did not specifically name Dr. Margaret Rector in grievance NC 13-00026, the specific reference to her treatment of Plaintiff in Defendant Kelley's response is sufficient to find that Dr. Rector was identified for purposes of exhaustion. (*See* Doc. No. 31-2 at 5.)

B. **Eighth Amendment Claim**

Dr. Richard argues that Plaintiff fails to show he acted with deliberate indifference to his serious medical needs.

7

According to Plaintiff's medical records, he arrived at the Ouachita River Unit as a new commitment on April 23, 2012. (Doc. No. 31-4 at 1.) The records show he attempted suicide by overdosing on Trazadone he had hoarded while in the county jail. (*Id.*) Dr. Forrest evaluated Plaintiff and diagnosed him with mood and personality disorder. (*Id.* at 10.) Dr. Forrest noted Plaintiff had been without medications for eleven days and was unclear of the symptoms which were being addressed by those medications. Dr. Forrest noted no level of distress at that time and recommended no medications or further assessment. (*Id.* at 11.)

Dr. Richard, a psychiatrist, first saw Plaintiff on May 24, 2012, and finding no significant impairment or suicidal or homicidal ideations, recommended group therapy and no medications. (*Id.* at 29-30.) He ruled out post-traumatic stress disorder and diagnosed Plaintiff with possible borderline personality disorder and antisocial traits. (*Id.*) Dr. Richard again saw him on September 20, 2012, pursuant to Plaintiff's request for medication to treat depression and lack of sleep and appetite. (*Id.* at 33.) Again noting no suicidal or homicidal ideations, or thought disorder or impairment, Dr. Richard declined to prescribe medications. (*Id.*) Dr. Richard did prescribe Fluoxetine (Prozac) to Plaintiff on July 1, 2013, and continued it on September 30, 2013, when Plaintiff reported he was doing "allright." (*Id.* at 40, 51.)

Based on these encounters, Dr. Richard argues that Plaintiff provides no proof that he acted with deliberate indifference to his mental health needs. Rather, Dr. Richard argues that Plaintiff's complaints about the type of treatment he received fail to amount to a constitutional violation. Dr. Richard also presents the affidavit of Dr. Albert Kittrell, Regional Psychiatric Director for Correct Care Solutions, who states that a review of the medical records supports a finding that Richard's care and treatment of Plaintiff was appropriate and satisfactory for his complaints. (Doc. No. 31-6 at 1-2.)

Plaintiff disagrees, claiming that although Dr. Richard diagnosed him with borderline personality disorder on September 30, 2013, his failure to treat him with medication prior to that time is proof that he did not seriously consider Plaintiff's mental health needs. (Doc. No. 34 at 2-3.) Plaintiff further argues that Dr. Richard continued to deny him mental health treatment, despite multiple requests. (*Id*. at 4.)

To support an Eighth Amendment claim, a plaintiff must prove that a defendant acted with deliberate indifference to his serious mental health needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An allegation of negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). *See also Smith v. Marcantonio*, 910 F.2d at 502 (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

The Court finds no evidence that Dr. Richard acted with deliberate indifference when refusing to prescribe psychotropic medications. The evidence shows Dr. Richard based his decision on Plaintiff's attempted suicide using hoarded medication and Plaintiff's failure to specifically identify symptoms which could be treated by medication. Plaintiff's medical records also show that he was continuously monitored and treated by numerous mental health employees. Therefore, the Court finds as a matter of law that Dr. Richard did not violate Plaintiff's Eighth Amendment rights.

**C.     Qualified Immunity**

As ADC employees, Defendants Saling, Annie Rector, and Margaret Rector state they are protected from liability by qualified immunity. Qualified immunity protects officials who acted in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

Upon close review of the medical records and the evidence in support of the Defendants'

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

Motion, the Court finds that Defendants acted reasonably under the circumstances. Although Plaintiff alleges that they provided him no medical treatment, the medical records show quite the opposite. Defendants Annie Rector and Karen Saling were employed in the mental health services at the North Central Unit, but were not licensed to prescribe medication and could not make medication decisions. (Doc. Nos. 28-3, 28-5.) According to the medical records, Saling visited Plaintiff approximately eighty-five times from August 1, 2012, to March 18, 2013, as part of her rounds in the segregation Unit. (Doc. No. 30-1.) In addition, Annie Rector visited Plaintiff approximately thirty times from May 21, 2012, to February 25, 2013. (*Id*.) During the majority of those times, Plaintiff did not voice any mental health concerns. (*Id*.)

On several occasions, Plaintiff did complain about not being provided medications, and asked Saling and Rector why he was denied such medications. (*Id*. at 3; 30-2 at 2, 8, 12; 30-3 at 6, 7, 13.) Dr. Margaret Rector, a psychologist at the Varner Unit, states in her declaration that she interacted with Plaintiff on April 17, 2013, and June 25, 2013. (Doc. No. 28-4.) She noted Plaintiff denied self-harm ideation or stress and reported no mental health symptoms on April 17, 2013. (*Id*.) On June 25, 2013, she referred him to the psychiatric clinic, but was not able to prescribe any medication. (*Id*.)

Based on a review of Plaintiff's records, the Court finds no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right. These Defendants were not licensed to prescribe medication, which was Plaintiff's main complaint. In addition, these Defendants provided him with continuous mental health care, as evidenced by the medical records. Any dispute with that amounts to a disagreement over the type of mental health treatment Plaintiff received, which as noted earlier, cannot support a constitutional claim.

**D.     Sovereign Immunity**

Defendants Kelley, Mabry, Annie Rector, Karen Saling, and Margaret Rector are also entitled to sovereign immunity with respect to Plaintiff's allegations against them in their official capacities. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65-66 (1989); *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

**IV.    CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that

1.     Defendant "Unknown, Rehabilitation Program Manager, North Central Unit, ADC" be dismissed without prejudice.

2.     Defendants' Motions for Summary Judgment (Doc. Nos. 24, 29) be GRANTED.

3.     This cause of action be DISMISSED with prejudice.

4.     The Court should certify that, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this recommendation and the accompanying Judgment would not be taken in good faith.

IT IS SO RECOMMENDED this 9th day of May, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE